# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3235 | **DATE** | 6/20/2003 |
| **CASE TITLE** | Securities and Exchange vs. Putnam, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/23/03 at 11:00AM.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Putnam, Welchko and Figurelli's motion to dismiss the complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | JUN 23 2003 date docketed | |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | | 37 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | JUN 23 2003 date mailed notice | |
| JD | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SECURITIES AND EXCHANGE )
COMMISSION, )
 )
    Plaintiff, )
 )
v. ) 02 C 3235
 )
CARL E. PUTNAM, DONALD C. ) Judge George M. Marovich
WELCHKO, JOHN P. FIGURELLI, )
DARYL T. SPINELL, RONALD M. )
BANDYK AND RENEE L. LEVAULT, )
 )
    Defendants. )

DOCKETED
JUN 2 3 2003

MEMORANDUM OPINION AND ORDER

Plaintiff Securities and Exchange Commission ("SEC") filed a lawsuit against defendants Carl E. Putnam ("Putnam"), Donald C. Welchko ("Welchko"), John P. Figurelli ("Figurelli"), Daryl T. Spinell, Ronald M. Bandyk and Renee L. Levault, (collectively "Defendants"). SEC alleges, inter alia, violations of Section 17(a)(1) and (3) of the Securities Act, 15 U.S.C. Sections 77q(a)(1) and (3) ("Sections 17(a)(1) and (3)"). Putnam, Welchko and Figurelli now move to dismiss Counts I and II of the Complaint, pursuant to Fed R. Civ. P. 12(b)(6). For the reasons set forth below, the Court denies Defendants' motion.

BACKGROUND

The Complaint alleges the following relevant facts which, for purposes of deciding this motion, are taken as true. Hishon v. Kemp & Spalding, 467 U.S. 69, 73 (1984). Anicom, a national distributor of wire and cable products, had its initial public

offering in February 1995. Defendants' intention, as corporate officers of Anicom, was to build it into a company with approximately $1 billion in annual revenues, then sell Anicom to a larger company within five years. As part of this process, Putnam, Welchko and Figurelli created a scheme to inflate sales figures of Anicom and increase the stock price. Putnam, Welchko and Figurelli entered into transactions (or instructed employees to do so) for sales as "booked", when the purchasing company had no intention of purchasing from Anicom. In one instance, Putnam, as CEO of Anicom, requested that a customer submit an order that it did not intend to honor in an attempt to recognize revenue for Anicom's financial statements filed with the SEC. Furthermore, when there was a need for extending a customer's credit for a fictitious sale, Figurelli, as Vice President of Credit Services and Operations, provided the necessary credit approval.

Putnam, Welchko and Figurelli knew and disregarded the fact that employees, under their instructions, were entering false information into the billing system to show orders were shipped, when in fact they had not. With regard to companies such as Spanpro and GTT Electronics, Putnam, Welchko and Figurelli entered into transactions for sales with them that never materialized. In once instance, Welchko and Figurelli, with Putnam's knowledge, created a fictional company, SCL Integration, for the sole purpose of realizing $11.7 million in fictitious

2

sales. Welchko and Figurelli, with Putnam's knowledge, also made journal entries to improperly charge expenses. At one point, Figurelli acknowledged that about twenty percent of Anicom's sales were improper or uncollectible.

By 1999, Anicom had grown to more than sixty-one locations and nearly 1200 employees, in part by purchasing sixteen wire and cable companies through cash and stock transactions. However, through reports filed with the SEC, along with press releases of annual and quarterly earnings in 1998, 1999 and 2000, Anicom's revenues were overstated by $13.6 million, $15.2 million and $9.8 million, respectively. All of these fraudulent reports were signed by Putnam and Welchko. In 2001, Anicom was forced to file bankruptcy, costing Anicom shareholders over $80 million in losses.

## DISCUSSION

I. Standard for a Motion to Dismiss

When considering a motion to dismiss, a court must view the complaint's allegations in the light most favorable to the plaintiffs, and all well-pleaded facts in the complaint must be accepted as true. Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is proper only if it appears beyond a doubt that plaintiff can prove no set of facts in support of a claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiffs are not, however, entitled to

allege mere legal conclusions. <u>Kunick v. Racine County</u>, 946 F.2d 1574, 1579 (7th Cir. 1991). To withstand a motion to dismiss, a complaint must allege facts which sufficiently set forth the essential elements of the cause of action. <u>Gray v. County of Dane</u>, 854 F.2d 179, 182 (7th Cir. 1988). With these principles in mind, we turn to the motion presently before the court.

II. <u>"Offer or Sale" of Securities</u>

Counts I and II of the Complaint allege that Defendants violated Sections 17(a)(1) and (3) of the Securities Act. Sections 17(a)(1) and (3) make it unlawful for:

> "any person in the offer or sale of any securities or any security-based swap agreement . . .by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly -
> (1) to employ any device, scheme, or artifice to defraud [or]
> (3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. 77q(a)(1) and (3)

Putnam, Welchko and Figurelli claim they should not be subject to suit under Sections 17(a)(1) and (3) because they did not "offer or sell" securities in a fraudulent manner. Section 17(a) cannot be read restrictively and technically, but instead must be read flexibly. Occidental Life Ins. v. Ryan & Assocs, 496 F.2d 1255, 1262 (4th Cir. 1974). The Securities Act is couched in language which implies these particular section are designed to include the protection of buyers and sellers in the securities market, and not limited to preserving the market's integrity. Id. The Seventh Circuit's interpretation of the Securities Act, for the purposes of these antifraud provisions, is that sales and purchases of securities in the course of mergers satisfy the requirements of the statute. Dasho v. Susquehanna Co., 380 F.2d 262, 268. (7th Cir. 1968).

Although the legislative history, administrative construction, and judicial decisions do not produce a clear answer as to what exactly constitutes an "offer or sale" for purposes of Section 17(a)(1) and (3), Id. Courts have found that when there is a transfer of stock, along with evidence of fraud in connection with the transfer, there is sufficient evidence to satisfy the statutory requirements. Occidental, at 1262. The Supreme Court has held that a court need only determine if the defendants' conduct, alleged in the complaint, "is the type of fraudulent behavior which was meant to be forbidden by the

statute and the rule." Sec. & Exch. Comm'n v. Nat'l Sec., Inc., 393 U.S. 453, 467 (1968).

SEC alleges that Putnam, Welchko and Figurelli have committed the type of fraudulent behavior which the statute meant to forbid. Defendants operated Anicom with recklessness and disregard for the safety of its shareholders, costing more than $80 million in losses. With the ambition of selling Anicom to a larger contingency in the future, Putnam, Welchko and Figurelli engaged in a systematic manipulation of Anicom's sales figures to achieve their goal. They falsified quarterly reports to the SEC and developed a ghost customer called SCL Integration, solely to remedy an earlier impropriety by realizing $11.7 million in fictitious sales. Furthermore, Welchko and Figurelli, with the knowledge of Putnam, fraudulently made journal entries to improperly charge expenses to, among other things, accelerate the recognition of sales for Anicom.

The deception by Putnam, Welchko and Figurelli negatively affected shareholders and employees of Anicom. Putnam, Welchko and Figurelli made an "offer or sale" of stock through the purchase of sixteen smaller companies. Putnam, Welchko and Figurelli made an "offer or sale" of stock in exchange for business entities, while committing fraudulent activities within their corporation. These actions are of the type which the anti-fraud provisions of the statute were meant to prohibit. And,

therefore, they fall within the present interpretation adopted by the Supreme Court and this Circuit. <u>Securities and Exchange Commission</u>, at 467; <u>Dasho</u>, at 269.

III. <u>Directors and Officers Liability</u>

Defendants also argue that they did not personally "offer or sell" stock. The court has already held that Anicom did "offer or sell" securities during various acquisitions and mergers based on fraudulent reports and press releases issued by its officers, Putnam, Welchko and Figurelli. Where corporate fraud is alleged in prospectuses, annual reports, press releases, or other "group published information" it can be presumed that these are the collective actions of the corporate officers. <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1440 (9th Cir. 1987); <u>Morse v. Abbott Laboratories</u>, 756 F. Supp. 1108, 1111 (N.D. Ill. 1991). Some circuits have adopted a further requirement that there be sufficiently particularized allegations that each individual officer knew about the fraud and had an active daily role in the company. See e.g., <u>Wool</u>, at 1439.[1]

When applying the "group publish doctrine" to the present case, it is clearly evident that Putnam, Welchko and Figurelli can be held liable for Anicom's fraudulent activity. SEC has

---

[1] The Seventh Circuit has yet to address this issue, much less adopt this standard. However, even assuming that this standard should be applied, this Court finds that SEC has met even this heightened pleading standard.

7

sufficiently detailed Putnam, Welchko and Figurelli's active, daily role in guiding the company, as well as their fraudulent involvement with quarterly reports, press releases and annual reports. Putnam was President, a director and then CEO of Anicom. During this period, Putnam signed all of Anicom's annual reports, along with making public statements about them. Welchko served as Anicom's CFO and a director, signing annual reports as well as the quarterly reports. Figurelli served as Vice President and provided false information for Anicom's periodic reports, press releases, and annual reports.

Additionally, the Complaint alleges enough specific, fraudulent activity by Putnam, Welchko and Figurelli to state a claim against them under the heightened pleading standard of knowledge and participation adopted by some circuits. During the period when Putnam, Welchko and Figurelli were officers and directors of Anicom, they inflated sales numbers of Anicom, directed other employees to do the same, provided credit extensions knowing there were no sales figures for these credit extensions, and developed a fictitious company with fictitious sales to mask fraudulent figures in their annual reports and quarterly reports. This fraudulent information was provided by Putnam, Welchko and Figurelli in the course of their daily, active roles as officers of Anicom, with full knowledge of these transactions. Thus, SEC has stated a claim against Putnam,

8

Welchko and Figurelli for violations of Sections 17(a)(1) and (3).

### Conclusion

For the reasons set forth above, Putnam, Welchko and Figurelli's motion to dismiss the Complaint is denied.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: June 17, 2003